UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

U.S. BANK NATIONAL ASSOCIATION, :
AS TRUSTEE, AS SUCCESSOR IN :
INTEREST TO BANK OF AMERICA, :
NATIONAL ASSOCIATION, AS :
SUCCESSOR BY MERGER TO :
LASALLE BANK NATIONAL :
ASSOCIATION, IN ITS CAPACITY AS :
TRUSTEE FOR THE REGISTERED :
HOLDERS OF CD 2006-CD3, :
COMMERCIAL MORTGAGE PASS- :
THROUGH CERTIFICATES, :
SERIES CD 2006-CD3, :
c/o C-III ASSET MANAGEMENT, LLC :
  :
    Plaintiff : CIVIL ACTION NO. 3:12-1632
  :
    v. : JUDGE NEALON
  :
DRG CRUMS MILL RI, LLC, et al., :
  :
    Defendants :

## MEMORANDUM

On August 17, 2012, Plaintiff, U.S. Bank National Association, as Trustee, as successor in interest to Bank of America, National Association, as successor by merger to LaSalle Bank National Association, in its capacity as Trustee for the registered holders of CD 2006-CD3, Commercial Mortgage Pass-through Certificates, series CD 2006-CD3, filed a mortgage foreclosure complaint against Defendants, DRG Crums Mill, RI, LLC, DRG Crums Mill, LLC, and nineteen other limited liability companies known as DRG Crums Mill TIC 1, LLC through DRG Crums Mill TIC 19, LLC. (Doc. 1). On October 9, 2012, Plaintiff filed an amended complaint against the same Defendants adding to the caption that it was acting by and through C-III Asset Management LLC, its special servicer and attorney-in-fact. (Doc. 11). The action seeks

foreclosure on the real and personal property located at 4200, 4230 & 4250 Crums Mill Road, Harrisburg, Dauphin County, Pennsylvania 17112 ("Property"). (Doc. 11, p. 21). Defendants filed an answer and affirmative defenses on October 22, 2012. (Doc. 16, p. 10, ¶ 1).

On May 16, 2013, Plaintiff filed a motion for judgment on the pleadings and a brief in support thereof. (Docs. 25-26). After an order granting Defendants an additional twenty (20) days in which to respond to the motion, Defendants filed a brief in opposition on July 2, 2013. (Docs. 28 & 30). Plaintiff filed a reply brief on July 18, 2013. (Doc. 31). The motion for judgment on the pleadings is now ripe for disposition and for the reasons that follow will be granted.

## I. FACTS

Plaintiff is a national banking association with its principal place of business in Cincinnati, Ohio. (Doc. 11, ¶ 1); (Doc. 26-8). Defendants are Pennsylvania limited liability companies with their principal place of business in Radnor, Pennsylvania. (Doc. 11, ¶¶ 4-24) admitted in (Doc. 16, ¶¶ 4-24).

Citigroup Global Markets Realty Corporation made a loan in the amount of $14,500,000.00 ("Loan") to Defendants DRG Crums Mill RI, LLC, DRG Crums Mill, LLC, DRG Crums Mill TIC 1, LLC, and DRG Crums Mill TIC 2, LLC which was secured by a "Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing," ("Mortgage"), an "Assignment of Leases and Rents" ("Lease Assignment"), and UCC Financing Statements on the Property, all executed on June 29, 2006 and recorded in the Recorder of Deeds Office of Dauphin County, Pennsylvania on July 7, 2006. (Doc. 11, ¶¶ 27, 28, & 30) admitted in (Doc. 16, ¶¶ 27, 28, & 30); (Doc. 1-2); (Doc. 12-1); (Doc. 12-3). From July through August of

2006, the said Defendants, through multiple Assumption Agreements, conveyed tenant-in-common interest percentages in the Property to the remaining named Defendants (DRG Crums Mill TIC 3, LLC through DRG Crums Mill TIC 19, LLC). (Doc. 11, ¶¶ 38-54) admitted in (Doc. 16, ¶¶ 38-54); (Docs. 13-14). Subsequently, the Mortgage, the Assignment of Leases and Rents, and the UCC Financing Statements were assigned to Bank of America (successor to LaSalle Bank National Association), and then were assigned to Plaintiff. (Doc. 11, ¶¶ 2-3, 32-37); (Docs. 12-4, 12-5 & 12-6).

A REMIC[1] trust, designated as "CD 2006-CD3 Mortgage Trust," was formed pursuant to a "Pooling and Servicing Agreement" ("PSA") dated October 1, 2006, between Deutsche Mortgage & Asset Receiving Corporation, the Depositor; Capmark Finance Inc., the General Master Servicer; Wachovia Bank, the Master Servicer No. 2; J.E. Robert Company, Inc., the Special Servicer; and LaSalle Bank National Association, the Trustee and Paying Agent. (Docs. 26-1 through 26-7). The mortgage loan in question is included as an asset in the trust.[2]

Defendants have failed to make payments on the loan from May 2012 to present, and, as of July 31, 2012, Defendants owe $16,974,900.02, plus interest accruing since August 1, 2012. (Doc. 11, ¶¶ 57 & 59) not specifically denied in (Doc. 16, ¶¶ 57 & 59).[3] Plaintiff, as Trustee of

---

[1]REMIC, which stands for "real estate mortgage investment conduit," is a creature of federal tax law. See 26 U.S.C. § 860D.

[2]Although neither party included the exhibits to the PSA, particularly the Mortgage Loan Schedule, which lists the loans in the trust, both parties agree that the loan in question is an asset of the trust. See (Doc. 11, ¶¶ 2-3) and (Doc. 30, p. 5) (Defendant argues that the Special Servicer "is authorized to prosecute an action to enforce the obligations of the Defendants.").

[3]Pursuant to Federal Rule of Civil Procedure 8(b)(6), Plaintiff's factual allegation contained in paragraph fifty-seven (57) of the amended complaint will be deemed admitted for Defendants' failure to respond to the factual allegations contained therein, and the monetary

3

the trust seeks to foreclose on the loan documents. (Doc. 11, pp. 21-22).

## II.  LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, after the pleadings are closed, any party may move for judgment on the pleadings. A Rule 12(c) motion is designed to provide a means for disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice. See Charles Alan Wright and Arthur B. Miller, Federal Practice and Procedure, § 1367. A court should only grant a motion for judgment on the pleadings if it is clear that the merits of the controversy can be fully and fairly decided in this summary manner. See id. at § 1369.

In deciding a motion for judgment on the pleadings, a court must consider the facts alleged in the pleadings and the inferences drawn from these facts in the light most favorable to the nonmoving party. See Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County, 271 F.3d 140, 144-45 (3d Cir. 2001); McCoy v. Southeastern PA. Transp. Auth., No. 01-5881, 2002 WL 376913, *1 (E.D. Pa. 2002). The motion may only be granted if there are no factual allegations in the pleadings which, if proven, would allow the nonmoving party to recover. See Oxford Assocs., 271 F.3d at 144-45; McCoy, 2002 WL 376913 at *1.

---

amounts alleged to be owed in paragraph fifty-nine (59) will also be deemed admitted for Defendants failure to respond to the substance of the allegation. FED. R. CIV. P. 8(b); see also Wells Fargo Bank, N.A. v. Carr, 2007 U.S. Dist. LEXIS 10570, *12 (M.D. Pa. 2007) (Caputo, J.) (In granting judgment on the pleadings, the Court stated,"if defendant mortgagors do not plead specific facts in response to the allegations in the complaint regarding the default and the amount due, said defendants are deemed to have admitted the allegations set forth in the complaint."). It should also be noted that nowhere in response to Plaintiff's motion do Defendants contest that they are in default on the loan or contest the amount owed. See (Doc. 30).

4

## III. DISCUSSION

Defendants make two arguments against Plaintiff's motion for judgment on the pleadings: 1) Plaintiff has failed to establish that it has standing to bring this action; and 2) this Court lacks jurisdiction over this matter. (Doc. 30, pp. 3-9).

Defendants argue that a plaintiff must set forth specific facts that the rights and interest sought to be vindicated are those of the plaintiff, as opposed to those of third parties. (Doc. 30, p. 4), citing Anjelino v. New York Times, Co., 200 F.3d 73, 88 (3d Cir. 1999). Citing section 3.35 of the PSA that created the REMIC trust, Defendants argue that the express terms provide that the Special Servicer, and not the Trustee, is authorized to prosecute an action to enforce the obligations of the Defendants. (Doc. 30, pp. 4-5).

In its reply brief, Plaintiff argues that "the Plaintiff-Trustee's delegation of responsibility for litigation to a Special Servicer *does not* deprive Plaintiff of its status as the real party in interest to this litigation." (Doc. 31, p. 6) (emphasis in original). Plaintiff highlights the lack of any case law to support Defendants' supposition and cites the following for precedent that the trustee of a REMIC trust is a proper plaintiff in foreclosure actions even where the relevant PSA delegates litigation authority to a special servicer: LaSalle Bank National Association v. Nomura Asset Capital Corp., 180 F. Supp. 2d 465, 466-67 (S.D.N.Y. 2001); LaSalle Bank National Association v. Lehman Brothers Holdings, Inc., 237 F. Supp. 2d 618, 622-25 (D. Md. 2002); and U.S. Bank National Association v. Nesbitt Bellevue Property, LLC, 859 F. Supp. 2d 602 (S.D.N.Y. 2012). (Doc. 31, pp. 2-5).

A trustee of an express trust may sue in its own name without joining the person for whose benefit that action is brought. FED. R. CIV. P. 17(a)(1)(E). Here, Plaintiff, U.S. Bank

5

National Association, brings this action as trustee for the registered holders of CD 2006-CD3. (Doc. 11). According to the PSA section 3.35, "[t]he Special Servicer shall . . . represent the interests of the Trust in any litigation relating to the rights and obligations of the Mortgagor or Mortgagee, or the enforcement of the obligations of a Borrower, under the Mortgage Loan Documents." (Doc. 26-5, pp. 209-10). However, in section 2.01 of the PSA, the Depositor does "sell, transfer, assign, set over and otherwise convey to the Trustee . . . all the right, title and interest of the Depositor in and to the Mortgage Loans" and "the Mortgage Loan Purchase Agreements." (Doc. 26-2, p. 51, exhibit page 92). The United States District Court for the Southern District of New York, having analyzed a similar PSA, correctly determined that section 3.35 may assign "certain duties . . . in connection with maximizing recovery of defaulted loans," however, these delegations do not "affect the basic premise . . . that a trustee of an express trust is the real party in interest when suing on behalf of the trust." Nomura, 180 F. Supp. 2d at 471, citing Navarro Savings Ass'n v. Lee, 446 U.S. 458, 464, 64 L. Ed. 2d 425, 100 S. Ct. 1779 (1980) (The trustee "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of" the certificateholders and "is a real party to the controversy for purposes of diversity jurisdiction."); Lehman Brothers, 237 F. Supp. 2d at 633 (following the Nomura Court and holding that "[m]erely because the PSA in this case delegates to CMSLP the right to institute a suit in its capacity as Special Servicer does not affect the basic premise that the trustee of an express trust is the real party in interest when suing on behalf of the trust"); Nesbitt, 859 F. Supp. 2d at 607 (Trustee was real party of interest under Federal Rule of Civil Procedure 17 notwithstanding the role accorded to a Special Servicer under the PSA.). Here, despite the delegation of certain administrative duties to the Special Servicer, U.S. Bank National

Association, as trustee, is the real party of interest and has standing to bring this suit.

Defendants next argue that this Court lacks jurisdiction over this matter. (Doc. 30, pp. 5-9). In the amended complaint, Plaintiff alleges, that "[j]urisdiction exists in this Court pursuant to 28 U.S.C. § 1332 as there exists complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest." (Doc. 11, p. 9, ¶ 26). There is no dispute that the amount in controversy exceeds $75,000.00. Rather, Defendants argue that the Plaintiff is analogous to the "naked trustee" in Navarro and, accordingly, the citizenship of the trust beneficiaries should be considered in determining diversity. (Doc. 30, p. 9). Defendants assert that the PSA does not grant Plaintiff those "certain customary powers" over the trust fund such as control of litigation, citing section 3.35. (Doc. 30, p. 8). Defendants also highlight sections 3.01 and 3.03 which grant the powers to service and administer the loan and collect payments under the loan to the Master Servicer and Special Servicer. (Doc. 30, p. 8). Defendants argue that Plaintiff does not possess the traditional powers of a trustee because it does not have control over trust litigation and because its control over trust assets is limited and, accordingly, Plaintiff does not meet the Navarro standard so citizenship of the trust beneficiaries should be considered. (Doc. 30, p. 9).

Plaintiff counters that the PSA's "delegation of servicing and administration of the mortgage loans in the trust to the Master Servicer and Special Servicer does not deprive Plaintiff of its status as active trustee and the real party of interest." (Doc. 31, p. 11). Plaintiff argues that Wells Fargo Bank, N.A. v. CCC Atlantic, LLC, 905 F. Supp. 2d 604 (D.N.J. 2012), rejected the very same argument that Defendants are making. (Doc. 10). In CCC Atlantic, the United States District Court for the District of New Jersey analyzed similar PSA sections which delegated

7

service and administration, collection, and litigation of the loan agreements. CCC Atlantic, 905 F. Supp. 2d at 607-08. In response to CCC Atlantic's argument that this was a "naked trustee," which "does not have real and active control over the assets of the trust," the Court held:

> ... the fact that the Trustee has delegated loan servicing duties to the Master Servicer and the Special Servicer does not compel the conclusion that the Trustee lacks the requisite control. As already explained, the money the servicers collect belongs to Wells Fargo (for the benefit of the Certificateholders), not the servicers themselves. Additionally, the ultimate duty to collect on the mortgage loans— whether in the regular course of business, or through foreclosure— remains with Wells Fargo because it must fulfill the duty in the absence of the Master Servicer or the Special Servicer.

Id. at 611-12, citing Navarro, 466 U.S. at 465 and Restatement (Third) of Trusts § 80, comment e. The Court concluded that Wells Fargo was an active trustee and therefore its state of citizenship should be used in diversity analysis. Id. at 614.

Here, like in CCC Atlantic, section 2.01 of the PSA agreement expressly creates a trust. See (Doc. 26-2, p. 51, exhibit page 92); CCC Atlantic, 905 F. Supp. 2d at 611, n.13, citing 1 Austin Wakeman Scott, William Franklin Fratcher, & Mark L. Ascher, Scott and Ascher on Trusts, § 3.1 (5th ed. 2006) ("Usually, a trust comes into existence upon the transfer of property . . . to another, as trustee. . . . In the case of an inter vivos transfer in trust [as opposed to a trust created by will], the transferor is the creator and the terms of the trust ordinarily appear in the instrument of transfer. . . . Alternatively, they may appear in an instrument executed by the Trustee, acknowledging receipt of the property and that he or she holds it in trust."). Pursuant to the PSA, "all the right, title and interest of the Depositor in and to the Mortgage Loans" and "the Mortgage Loan Purchase Agreements" were transferred to the trustee, Plaintiff. (Doc. 26-2, p. 51, exhibit page 92). Despite the delegation in the PSA of certain administrative duties,

ultimately, Plaintiff retains responsibility for the management of the assets placed in the trust. Accordingly, because Plaintiff retains possession of "certain customary powers to hold, manage, and dispose of assets," it is not a "naked trustee" because Plaintiff "does have a real and active control over the assets of the trust." Emerald Investors Trust v. Gaunt Parsippany Partners, et al., 492 F.3d 192, 200-01 (3d Cir. 2007) (quoting Navarro, 446 U.S. at 464-66). Thus, Plaintiff's citizenship is controlling for diversity jurisdiction purposes and diversity jurisdiction is established.

As discussed in footnote three (3) herein, Defendants do not contest that the Loan is in default or contest the amount owed. See (Doc. 30). Further, a reading of the factual allegations in the pleadings in the light most favorable to Defendants, leads to the conclusion that Defendants have been in default on the Loan since May 2012 and as of July 31, 2012 owed $16,974,900.02 plus interest as alleged and not specifically denied by Defendants. (Doc. 11, ¶¶ 57 & 59); (Doc. 16, ¶¶ 57 & 59). Accordingly, judgment on the pleadings will be granted for Plaintiff.

## IV. CONCLUSION

Defendants' arguments against Plaintiff's motion for judgment on the pleadings are without merit. Further, it is established that Defendants have an obligation to make payments under the Loan, failed to make those payments, and are in default. Accordingly, judgment on the pleadings in favor of Plaintiff will be granted.

A separate Order will issue.

Date: **August 21, 2013**

_____
**United States District Judge**